UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

NGOLA SANTOS,
    *Plaintiff*,

v.

COMMISSIONER OF SOCIAL SECURITY,
    *Defendant*.

No. 3:19-cv-00531 (JAM)

**ORDER DENYING MOTION TO REVERSE
AND GRANTING MOTION TO AFFIRM**

Plaintiff Ngola Amenu Santos asserts that he is disabled and unable to work due to several conditions. He has brought this action *pro se* pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Commissioner of Social Security, who denied his claim for disability insurance benefits and supplemental security income. Santos has filed a motion to reverse the decision of the Commissioner, Doc. #24, and the Commissioner has filed a motion to affirm his decision, Doc. #27. For the reasons set forth below, I will deny Santos's motion to reverse and grant the Commissioner's motion to affirm.

## BACKGROUND

I refer to the transcripts provided by the Commissioner. *See* Doc. #15. Santos filed an application for disability insurance benefits and supplemental security income on November 20, 2015, alleging a disability that began on June 25, 2015. *Id.* at 374-87. Santos's claim was initially denied on May 26, 2016, *id.* at 301-10, and denied again upon reconsideration on October 20, 2016, *id.* at 314-21. He then filed a written request for a hearing by an administrative law judge (ALJ) on November 4, 2016. *Id.* at 322-23.

1

Santos appeared *pro se* and testified at a hearing in Providence, Rhode Island, before ALJ Paul W. Goodale on January 2, 2018. *Id.* at 177-245. Vocational expert Kenneth R. Smith testified in person. *Id.* at 229. On March 30, 2018, the ALJ issued a decision concluding that Santos was not disabled within the meaning of the Social Security Act. *Id.* at 13-33. The Appeals Council denied Santos's request for review on February 4, 2019. *Id.* at 6-10. Santos then filed this federal court action on March 30, 2019. Doc. #1.

To qualify as disabled, a claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months," and "the impairment must be 'of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'" *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 45 (2d Cir. 2015) (quoting 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A)). "[W]ork exists in the national economy when it exists in significant numbers either in the region where [claimant] live[s] or in several other regions of the country," and "when there is a significant number of jobs (in one or more occupations) having requirements which [claimant] [is] able to meet with his physical or mental abilities and vocational qualifications." 20 C.F.R. §§ 404.1566(a)-(b), 416.966(a)-(b); *see also Kennedy v. Astrue*, 343 F. App'x 719, 722 (2d Cir. 2009).

The agency engages in the following five-step sequential evaluation process to determine whether a claimant is disabled:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of

> Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*Estrella v. Berryhill*, 925 F.3d 90, 94 (2d Cir. 2019); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).

In applying this framework, if an ALJ finds a claimant to be disabled or not disabled at a particular step, he may make a decision without proceeding to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proving the case at Steps One through Four; the burden shifts at Step Five to the Commissioner to demonstrate that there is other work that the claimant can perform. *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).

At Step One, the ALJ determined that Santos had not engaged in substantial gainful activity since June 25, 2015, the date of the alleged onset of his disability. Doc. #15 at 19. At Step Two, the ALJ concluded that Santos suffered from the following severe impairments: depression, anxiety, and bipolar disorder. *Ibid.*

At Step Three, the ALJ determined that Santos did not have an impairment or combination of impairments that met or equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 21.

The ALJ then found that Santos had a residual functional capacity (RFC) to perform medium work as defined in 20 C.F.R. §§ 404.1567(c), 416.967(c), with the following limitations:

> The claimant is able to lift and carry 50 pounds occasionally and 25 pounds frequently. The claimant can sit, stand, and walk for six-hours each in an eight-hour workday. He must avoid concentrated exposure to fumes, odors, dust, gases, pulmonary irritants and poorly ventilated areas. The claimant could not do production rate

3

> or pace work (i.e., assembly line type work, outwardly paced, working in close tandem with co-employees), but could do individual table and bench work. He must work in a low-stress job having only occasional decision-making and occasional changes in work setting. The claimant can only have superficial interaction with co-workers. He could have only occasional contact with supervisors and with the general public.

*Id.* at 23. At Step Four, the ALJ concluded that Santos was able to perform past relevant work as a hand packager. *Id.* at 31.

In an alternative Step Five finding, the ALJ considered Santos's age, education, work experience, and RFC, and relied on the testimony of the vocational expert in concluding that Santos had the RFC to perform a significant number of jobs in the national economy, such as assembler, packager, store clerk, office helper, and stock clerk. *Id.* at 32. The ALJ ultimately found that, from the alleged disability onset date to the date of the decision, Santos was not disabled within the meaning of the Social Security Act. *Id.* at 33.

Santos makes three claims of error. First, he claims that the ALJ "did not acknowledge" his physical impairments, such as the dysfunction of his back, hip, and joints, which make him unable to "ambulate effectively"—an apparent challenge to the RFC finding. Doc. #24-1 at 2. Second, he claims that the ALJ failed to list as severe his back and hip pain, monocular diplopia in his left eye, senile cataracts, insomnia, and medication side effects. *Id.* at 2-3. Lastly, he claims that he is disabled because the vocational expert testified in response to a hypothetical that there are no jobs in the national economy for someone who, due to limitations in concentration, persistence, and pace, takes two or more unscheduled breaks in addition to regular breaks in an eight-hour workday and who would be off-task 20% or more of the workday—criteria that he allegedly meets. *Id.* at 3-4. I take this to be an argument that the hypothetical the

ALJ actually relied on was flawed in not incorporating such limitations. I address each claim below.

## DISCUSSION

The Court may "set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008); *see also* 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (*per curiam*). Absent a legal error, the Court must uphold the Commissioner's decision if it is supported by substantial evidence, even if the Court might have ruled differently had it considered the matter in the first instance. *See Eastman v. Barnhart*, 241 F. Supp. 2d 160, 168 (D. Conn. 2003).

### *The ALJ's Step Two analysis*

An ALJ does not commit reversible error where substantial evidence supports a finding that an impairment is non-severe. *See Meadors v. Astrue*, 370 F. App'x 179, 182 (2d Cir. 2010). An impairment or combination of impairments is non-severe "if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities," such as walking, seeing, and remembering simple instructions. 20 C.F.R. §§ 404.1522, 416.922.

The ALJ expressly considered Santos's back and hip pain in his decision, Doc. #15 at 20-21, and impliedly considered the joint-pain side effect that Santos spoke to at his hearing, *id.* at 189. Santos's physical examinations from the alleged onset date to January 2016 were unremarkable; he presented with no musculoskeletal pain, normal gait and station, and normal, pain-free spinal movements. *Id.* at 463-94. In an August 2016 visit with an APRN, he

5

complained of chronic lower-back and bilateral-hip pain, which he estimated was at a level of a four on a scale of ten, and was prescribed Ibuprofen. *Id.* at 629-33. He was found to have a stable gait and was able to raise his leg with pain to the back only. *Id.* at 631. Although an October 2016 lumbar-spine MRI revealed that Santos had a herniated disc at L4-5 causing mild spinal canal stenosis, *id.* at 671, he reported that his pain was "intermittent but manageable," *id.* at 676. Orthopedist Richard S. Blum found that he had full range of motion in his lumbar spine and right hip, and that his left straight leg raise was within normal limits. *Id.* at 674, 684. MRIs of his hips from October 2016 and June 2017 were negative. *Id.* at 734, 796; *see also id.* at 687. After an April 2017 visit with Dr. Blum, Santos's treatment remained conservative: Ibuprofen. *Id.* at 686. Santos acknowledged at his hearing that he regularly played basketball, *id.* at 218-19; he even played the same month the ALJ's decision was made. *Id.* at 80, 87. He also reportedly exercised regularly in 2016. *Id.* at 520, 575.

Santos takes issue with the ALJ's characterization of his cataracts as the cause of his diplopia, which Santos alleges was purely the result of ocular trauma experienced during a basketball game in September or October 2012. Docs. #24-1 at 2-3; *see also* Doc. #15 at 462, 636. But as the ALJ noted, Henry Samson, O.D., examined Santos's eye in November 2012 and, despite trace amounts of non-age-related cataracts, found unaided acuities of DVA 20/20 and NVA 20/50 in the left eye as well as healthy peripheral structures and vasculatures. Doc. #15 at 636-40. In August 2015, after the alleged disability onset date, Martin Shapiro, M.D., found mild cortical cataracts in both eyes and opined they could be the source of Santos's diplopia, noting it was "reasonable to consider" cataract-removal surgery in the left eye and offering Santos a referral for that purpose. *Id.* at 460-61. State agency consultant Karen Sarpolis, M.D., similarly found in January 2016 that Santos's visual acuity was "only slightly diminished," the left-eye

cataract was causing "mild diplopia amenable to surgery," and the condition was "no[t] expected to last one year." *Id.* at 251. Ophthalmologist Hilary Fazzone, M.D., noted in September 2017 that Santos "requires surgery in the left eye to improve his vision" because "a marked posterior subcapsular cataract" had caused its visual acuity to worsen to 20/200; his right-eye central acuity remained 20/20 despite a cataract. *Id.* at 808. Despite these recommendations of surgery, Santos declined to go that route out of fear it would cause the loss of his nearsighted vision and out of a desire to pursue herbal remedies, though at the time of the hearing he had not yet mustered the funds to pay for them. *Id.* at 194-95. He wears reading glasses, but drives without them, noting he "can see ok in the daytime" and is "able to drive a little bit at night." *Id.* at 195-96. "[A] remediable impairment is not disabling." *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983) (citing 20 C.F.R. § 404.1530); *see also* 20 C.F.R. § 416.930. Santos was free to forego surgery, but substantial evidence in the record supports a finding that the surgery would have ameliorated his vision problems, and the ALJ was entitled to rely on it.[1]

Lastly, substantial evidence supports the ALJ's finding that Santos's insomnia was controlled. *Id.* at 21. State agency consultant Judy Kleppel, M.D., noted that Santos's insomnia was being treated with Ambien and sleep hygiene techniques. Doc. #15 at 278, 291. Primary care physician Dean Har, M.D., prescribed both for Santos in June 2015. *Id.* at 465. Just one month later, Santos's symptoms had improved. *Id.* at 469. During a visit to Jeannette Knipe, LCSW, in July 2016, Santos described having difficulty sleeping, but when he "found an Ambien," it "helped him sleep for 5 hours." *Id.* at 523. But in July 2017, he reported that he "already stopped . . . the Ambien," *id.* at 696, and in August 2017 admitted to "not taking [it] regularly," *id.* at

---

[1] Santos cites to the definition of "disability" under the Americans with Disabilities Act in order to argue that it was improper for the ALJ to consider possible ameliorative treatments for his vision problems. Doc. #24-1 at 3 (citing 42 U.S.C. § 12102(4)(E)(i)). But the definition of disability under the Social Security Act, which is distinct, governs this action. *See DeRosa v. Nat'l Envelope Corp.*, 595 F.3d 99, 103 (2d Cir. 2010) (noting the definitions differ).

716. To the extent that insomnia affected his ability to function, it was a result of him not taking prescribed medication, which renders the condition non-disabling. *See Mongeur*, 722 F.2d at 1039.

I conclude that the analysis at Step Two was supported by substantial evidence and that there otherwise was no error that requires remand, because the ALJ identified severe impairments at Step Two, and otherwise proceeded to evaluate Santos's claim through the sequential evaluation process. *See Woodmancy v. Colvin*, 577 Fed. App'x. 72, 74 n.1 (2d Cir. 2014); *Stanton v. Astrue*, 370 Fed. App'x. 231, 233 n.1 (2d Cir. 2010).

### *The ALJ's RFC finding*

It is well established that a calculation of RFC must be based on the medical record and not on the ALJ's lay opinion. *See Burgess*, 537 F.3d at 131. In calculating the RFC, "an ALJ is not required to discuss every piece of evidence submitted," and "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (*per curiam*). The ALJ's RFC determination must include "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations)." Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P, 1996 WL 374184, at *7 (1996). The RFC finding "need only afford an adequate basis for meaningful judicial review, apply the proper legal standards, and be supported by substantial evidence such that additional analysis would be unnecessary or superfluous." *McIntyre*, 758 F.3d at 150 (cleaned up).

The ALJ's RFC finding that Santos "can sit, stand, and walk for six-hours each in an eight-hour workday" is supported by substantial evidence. As discussed above, his back, hip, and

joint pain were "manageable," his treatment was conservative, he was found to have full range of motion in his lumbar spine and right hip, and he was able to do a left straight leg raise within normal limits. He also played basketball and exercised regularly during the relevant period.

### *The ALJ's Step Five analysis*

An ALJ may rely on a vocational expert's response to a hypothetical where the assumptions contained therein are supported by substantial evidence and accurately reflect the claimant's limitations. *See McIntyre*, 758 F.3d at 151. The hypothetical that the ALJ relied on in making his Step Five finding limited Santos to low-stress work involving only occasional decisionmaking and occasional changes in work setting. *Compare* Doc. #15 at 23, *with id.* at 236. But Santos claims that due to distracting mental and back, hip, and joint disorders, he has limitations in concentration, persistence, and pace that would cause him to be off-task and take too many breaks. Doc. #24-1 at 3. I find that the assumptions in the hypothetical that the ALJ relied on are supported by substantial evidence.

State agency psychological consultants Susan Uber, Ph.D., and Christopher Leveille, Psy.D., respectively reviewed the evidence of record in May and October 2016, and opined that Santos would be able to maintain concentration, persistence, and pace in simple tasks on a full-time basis. Doc. #15 at 255, 282. As for the record itself, in June 2015, Santos visited Dr. Har with "minor complaints" of increased anxiety, but was otherwise found to have normal cognitive function. *Id.* at 463-64. In a follow-up visit in July 2015, his anxiety and mood symptoms improved by 50% within a week of starting his prescribed Lexapro medication, *id.* at 466, 469, and improved by "at least" 60-70% within a week of that visit, *id.* at 472. When his symptoms worsened, adjustments to his dosage proved effective. *See, e.g.*, *id.* at 484, 490. Conversely,

when he discontinued his medication, his symptoms worsened; they improved when he continued taking the medication again in January and February 2016. *Id.* at 493, 500.

Psychiatrist Jesus A. Lago, M.D., in May 2016 found Santos to have orderly thoughts and the ability to follow instructions, and to be oriented with intact cognition and memory. *Id.* at 504. A contemporaneous neuropsychological exam was "largely normal." *Id.* at 515. Then, in September 2016, psychiatrist Cenk Tek, M.D., found that Santos's "narrative does not fit the complaints," that "clearly there is no clinical picture from my perspective that needs to be addressed with a medication," and noted he did "not believe [Santos] was psychotic at any point" and "[c]an't rule out malingering either." *Id.* at 573, 575. In August 2017, Christina Iovanne, LCSW, found Santos "[n]egative for behavioral problems, confusion, decreased concentration, dysphoric mood, [and] hallucinations . . . ." *Id.* at 722. In a January 2018 psychiatric examination, Eric Lin, M.D., found he had normal attention and concentration. *Id.* at 46. Cassandra Ramsey, APRN, evaluated Santos similarly in a February 2018 visit. *Id.* at 70.

## CONCLUSION

For the foregoing reasons, the Court DENIES Santos's motion to reverse the decision of the Commissioner (Doc. #24) and GRANTS the Commissioner's motion to affirm (Doc. #27). The Clerk of Court shall close this case.

It is so ordered.

Dated at New Haven this 26th day of June 2020.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge